May it please the court Eric Brignac for appellant Byron Antone. It is uncontested that for the past 14 years of his life Byron Antone has said and he is not the angry violent substance abuser who entered tribal jail in 1999. It's hard to think of what else he could have done to demonstrate volitional control over the mental illnesses that plagued him as a young man and which he still has a diagnosis of today but which manifest fundamentally differently than they did in 1999. And in the light of that record the district court had an obligation to address Mr. Antone's evidence instead of effectively summarily dismissing that evidence. That error along with the district court's committing of Mr. Antone based on the two most common mental health diagnoses in the Bureau of Prisons constitutes reversible error and the commitment order in this case should be vacated. It is first probably worth noting that Mr. Antone suffers according to the district court from antisocial personality disorder and from substance abuse. But those diseases exist certainly on a spectrum and if we look at joint appendix 1132 that's Dr. Gutierrez that's the government's doctor he talks about how good Mr. Antone's coping mechanisms have been. Let me make sure I three different prongs here we're looking at and it appears to me you're conceding at least two of them. Yes um your honor exactly our he certainly has committed acts of sexual violence in the past and he certainly suffers from substance dependence. We disagree that he suffers from antisocial personality disorder but we're not saying the district court was clearly erroneous. The question and what this hinges on is the third and most significant prong which is Mr. Antone's volitional control and so in doing that my question goes to it looks like you're making an interplay between the second prong and the third prong insofar as the significance of the type of mental illness. Yes and and the statute itself does sort of merge those your honor I think it is this court has talked about it and I agree is sort of a three-prong test the statute sort of merges the second and third prong and talks about a mental disorder as a result of which you would have a serious difficulty in refraining from sexually violent conduct. And it's your contention that mental illness must relate to some type of sexual conduct or is that under the language of the statute and under the due process clause as interpreted by Crane there needs to be some sort of paraphilia. However in this case that that is certainly a you know that is a constitutional ruling. I do not think this court needs to go that far because in Mr. Antone's case the government has not presented evidence that his antisocial personality disorder and his substance dependence rises to the level of causing him that level of volitional control. It's worth noting again antisocial personality disorder exists on a spectrum. In our office we have a lot of these 42-48 cases and we see antisocial personality disorder. We have clients who've kicked open locked chain-link fence exercise cages so they can get to a guard. We have clients when I go visit them I know I have to budget an extra hour or so because they're in the shoe segregated housing unit because they're always picking fights. Mr. Antone while possibly having you know this mental illness of antisocial personality disorder has demonstrated exceptional volitional control. Mr. Antone voluntarily goes to talk to a counselor. Mr. Antone meditates. Mr. Antone beads. Mr. Antone again over the past decade and a half of his life has demonstrated that you know this label of antisocial personality disorder and this label of substance dependence you know again these are mental diseases on a spectrum. He's on the far left side of the spectrum and he's demonstrated volitional control. Now your point Judge Nguyen about the actual paraphilic diagnosis. There may be as we say in our brief a hypothetical case where someone has a non-paraphilic diagnosis that ultimately could cause them to meet criteria under the statute. I think Justice Scalia points out in his dissent in Crane someone with a delusional disorder where he believes that every woman he meets wants to have sex with him. So there you have a delusional disorder a non-paraphilic disorder as a direct result of which you may have serious difficulty in refraining. That's not before the court today. What is before the court today is a case where the government doctors all talked about all believed he had this paraphilic disorder. So right there you know that the three-legged stool if the government is basing its commitment order on the expert opinions the primary core of the expert opinions has been kicked out from under the stool. I mean look at Dr. Phoenix herself you know the district court's entire analysis of Dr. Phoenix's position is the court agrees with the latter conclusion. That's it. I When the magistrate judge is asking her saying okay what is this distinction between someone with a paraphilic disorder and someone who just wants to is a bad man who may just be a rapist. Her answer isn't the government would have it that oh it doesn't matter. Her answer for two pages is she goes on to explain it is a paraphilia. You know she believes and her answer is contingent on it is a paraphilia. You look at again the government brief at 22 summarizes it. She actually says herself that the theory on which the government relies and the district court relied that oh you know he has a drink and if he has a drink he loses control. You know she says that theory that's too simplistic. That's not what this is about. She believed and she was wrong according to every judge to have looked at this case he suffered from a paraphilia. Even joint appendix 420 where she says you know the question is put straight to her which do you believe that she would that he could be committed without a paraphilia. She says yes but look at her reasoning. Her reasoning is that because I think even without a paraphilia he's likely to do something again. That's not the statutory standard. That's not the constitutional standard. She's not a lawyer. She's not a judge. We don't hold her to that but she was basically saying preventative detention. You know I think Mr. Antone may commit a crime if he gets back out so yeah he probably does still meet criteria. That's what she says at 420. The district court says I agree with that conclusion but that conclusion is wrong. That conclusion necessarily as a matter of law leads to the position that somebody who's in the Bureau of Prisons with a substance abuse problem with an point that what 70 percent of the people in the Bureau of Prisons are civilly committable. You know if we draw that Venn diagram with antisocial substance dependence and people in BOP there's more overlap than separation in that Venn diagram. So you're not saying that the illness itself has to be linked to sexual type conduct or sexual illness but that if it is an antisocial type disease it still must show the level of severity that would indicate the lack of volitional control. I believe that that is certainly that case is possible your honor that there could be someone with an extreme antisocial personality disorder much more extreme than Mr. Antone's such that we can save that case for another day that that person could be committable. In this case where we have someone who voluntarily sees a counselor, who has entered all of these programs to improve himself, who meditates, who beads, who works as an orderly, who is trusted by the Bureau of Prisons. Well that that's evidence in his favor but you have two government experts as you pointed out some of it is the interpretation of the evidence as the experts see it but they do have their opinions and the trial judge is put in position. What's the standard? Is it clear and convincing evidence? She must find that the government has met its burden by clear and convincing evidence. And yes and so given that standard on review if there is evidence that goes in the opposite direction even though it could go in your favor too aren't we bound to follow in that direction? No not in this case your honor because the this is not a case where you know the government experts presented a case our experts presented a case and the district court said effectively well you know I believe the government experts. The district court removed again if it's a three-legged stool she took out two legs. The district court said no he doesn't suffer from a paraphilia. That eviscerated the government's I thought the magistrate judge found that but did the district court specifically say you didn't find it? I thought that the district the district court your the magistrate judge found substance dependence. The district court found substance dependence and antisocial personality disorder. No judge found a paraphilia found in Mr. Antone's case an attraction to teenagers or prepubescent children or an attraction to non-consenting sex. It's been a while since I looked at records but I thought the district court judge disagreed in terms of the paraphilia but but found there was a basis otherwise. Yeah the district judge found no paraphilia but found commitment anyway. Why did she do that? How could she do that? Well I'll give you her analysis in toto. She says Dr. Phoenix is a lawyer. Dr. Phoenix is a lawyer. She says she agrees with that conclusion and as I hope to have demonstrated if you look at the record Dr. Phoenix's position doesn't say that. Dr. Phoenix insists he has a paraphilia and base their conclusion on that and on joint appendix 420 where she does say you know this is what the district court says she agrees with that conclusion. Dr. Phoenix at that point is talking about preventative detention and again Dr. Phoenix isn't a lawyer. Dr. Phoenix isn't a judge. I don't think it's you know to her detriment she holds that and believes that but you know that's preventative detention. That is the core of the Crane opinion in some ways and even the Hendricks opinion. You know that's something we that the courts do not do. If I may turn briefly to the question of the supervised release. Again that's part of you know we think that to the extent the district court erred there that is reversible error because the district court relied on the absence of his supervised release. It was not up to the district court in the eastern district of North Carolina to collaterally tell Mr. Antone's sentencing court you do not have supervised release. Right now as we speak today there's a judgment a criminal judgment from the district court of Arizona and if you read that judgment it says Mr. Antone has a term of supervised release unless and until his sentencing court says that is not the case. It's not up to the district court in North Carolina or any other court to say that that judgment is invalid. I certainly understand what the district court was trying to do. I think she was trying to be somewhat proactive and read the Turner case but the Turner case as we point out in our brief there's a lot of judicial tolling doctrines and a lot of other ways his supervised release may survive and it bears noting Mr. Antone wants this supervised release. Mr. Antone and again this tell me if this is someone who has real anti-social personality disorder and is you know going to have serious difficulty refraining. Mr. Antone went to his sentencing court and said please order me into a halfway house. Please give me this opportunity for a year. I want to spend a year at home in Arizona in a halfway house transitioning back into the community. You know they say Mr. Antone's still a substance dependent. Yeah he is you know this is a disease that's going to be with him for the rest of his life but what more could he do? He goes to Alcoholics Anonymous. He takes the classes. He wants to transition. He sees these resources offered. I mean this court sees it all the time. Goodness knows in our office we see it all the time. Criminal defendants who don't take advantage of these programs. They're young. They're angry. They just want to get out. They're on the back of their head. They're thinking they're going to offend again but then sometimes you have someone who doesn't do that. Mr. Brignac. Yes. Could I ask you a slightly different question? Please. Really of a housekeeping nature. I am aware as I think all of us are aware of the challenges facing the judges in North Carolina. Really all three and so forth but I was a little curious and I remain a little curious maybe you can clarify for me. In these civil commitment cases is it the routine practice for district judges to refer to magistrate judges to conduct the evidentiary hearings? I would have thought that it's not and that these are the kinds of cases understanding that all of the judges in the district are really hearing herself or himself. This your honor it is not routine and the vast majority are heard by the district court and Judge Flanagan herself hears most of her cases. This is the only case from our office and your honor I believe and maybe Mr. Breedenburg would know better. I think there's one case in front of a CJA with a CJA panel attorney that may also be be heard. I certainly pushed that issue you know it's worth noting you know we we had this case we have you know at our max we had over a hundred of these cases and you can't help you know you're zealously advocating for every client but you cannot help but sort of put them on a spectrum and Mr. Antone was on the far right side of that spectrum. In all candor we were somewhat surprised the government didn't consider dismissing his case and so we wanted this heard in front of a district judge. In fact when you have a case this strong it was sort of really disappointing to sort of add that middleman and and I would say possibly if if Judge Flanagan herself had heard this evidence directly and seen Mr. Antone and seen his reaction and watched him sitting there we may be in a very different appellate posture. I may be sitting at that table otherwise so I agree with you. That said having done the research I do think the Federal Magistrate Act is extraordinarily broad and I do think it probably we've concluded that it was within the district court's power to allow the magistrate to do that though certainly prudentially I don't agree personally with the practice. If there are no further questions? Well you didn't mention the words judicial estoppel and they seem to pop up in your brief a little bit. Yes and that your honor certainly gets to the question Mr. Antone went into his sentencing court and said please alter my supervised release. He argued in this case to the federal magistrate he brought in a special witness Ann Schrader to talk about his supervised release. He has argued in front of his sentencing court in the eastern district and relied on this supervised release which by the way he wants and the government or the district courts argument that he may be able to go into his sentencing court and say I don't have supervised release. I think that's the core of judicial estoppel. You know you've been relying on this supervised release and now you're coming in and saying you don't have it. I think he would just be a stopped and I think you know under the law and again under what I think Mr. Antone wants the day he gets out of Butner he begins his supervised release term day one and he'd be stopped from arguing otherwise. Has there been a case to hold anything close to what you are talking about in under these kind of effects that someone has been told you're going to get supervised release and you say their reliance upon it is important in this instance where the court subsequently takes it away? No your honor and I don't I think this case sounds rather interesting. I'm not sure I've seen anything like that. I think this fact pattern certainly I've tried to do the research. I did the research in writing the brief. It looks if not unique it's certainly obscure enough that I wasn't able to find another instance. Civil commitment at the federal level. So you put it forward? Your honor I think that we put forward the doctrine of judicial estoppel and I think on the merits of that estoppel and just because something hasn't come up before doesn't mean it can't come up the first time. There has to be a first case to hold something and if I may if I may just finish your honor with the red light on I also think responding yes of course. You know if we flip that around I don't the burden should be that the unique thing that hasn't happened before isn't us arguing judicial estoppel. It's a district court in North Carolina telling a district court in Arizona this supervised release that you ordered on this criminal defendant is null and void. That to me is the thing that's unprecedented and that ultimately was the legal error. Thank you your honors. Breedenburg. Thank you your honor. May it please the court my name is Mike Breedenburg and I represent the appellee of the United States of America. If I may I'd like to start with Judge Davis's question with regard to whether these cases are handled by magistrate judges and and I agree with Mr. Brignac that most if not the vast majority are handled by the district judges themselves. In this particular case it was one of the earlier cases and the magistrate judge was granted the opportunity to provide the evidentiary hearing and the MNR the memorandum and recommendation. However what's important to note here is that when Judge Flanagan got the case from the magistrate judge she did one of two things. She either adopted the facts and conclusions of the magistrate judge or if she didn't she conducted a de novo review of the record with regard to certain questions and I think that's the important piece here is that Judge Flanagan did not just either accept or reject what the magistrate judge did. If she rejected she actually conducted her whole review. She noted that in her order that she conducted a clear a complete review of the of the entire record and made certain determinations and one of the was the additional diagnosis of the determination the diagnosis of antisocial personality disorder. As has already been mentioned prong one as to whether Mr. Antone has engaged in sexually violent conduct or child molestation has been conceded it's not appealed and and also the diagnosis of poly substance dependence is also not challenged and not appealed. The issue that seems to be focused on is on that third prong and I guess initially in reading it seemed to me as though the defendant was saying this had to be some type of sexual illness connective illness mental disorder but his point seems to be more that once you took away that paraphernalia you took away what he characterizes two legs in a three-leg stool. How do you respond to that? What I heard the argument was that the position is not that a paraphernalia is absolutely required. I understood the argument to be that in this particular case the evidence wasn't strong enough for the for the antisocial personality and the poly substance dependence. The government certainly disagrees with that. In this particular case the district court considered again the entire record in determining whether those two diagnoses combined together are enough to cause a volitional control problem with with Mr. Antone and specifically she adopted it's also important that she adopted 17 pages of the facts of the magistrate court and none of those facts were challenged. Those facts included the positive things that Mr. Antone has done and certainly the bad history and the multiple rapes and child molestations that Mr. Antone has done. So the district. Tell me about the expert witnesses from what I understand the defendant's attorney just said is that for the most part the experts relied upon the determination that the illness was paraphernalia and that their opinions were based upon that illness but the district court specifically said no this is an antisocial this is a different type here. If you look at the testimony and the reports of the experts the government experts Dr. Gutierrez and Dr. Phoenix did in fact believe that Mr. Antone would be diagnosed with a paraphernalia. However they were both asked as to whether they would determine that he would be sexually dangerous without the paraphernalia. Dr. Phoenix specifically said absolutely he would be dangerous he'd be sexually dangerous he'd had volitional control problems without the paraphernalia. So although the government experts did believe that he had some paraphilic traits their analysis of the facts concluded that his other two diagnoses the polysubstance disorder and the antisocial personality disorder together would make him dangerous. That's like asking an expert do you think a person if they go out on a drunken binge for the weekend would they be dangerous? Yes they would be obviously they would be but the question is whether or not in fact these maladies would render him without volitional control. That's the question it's not whether or not they would project as counsel I think rightfully said this is not just antisocial behavior that's so generally broad it is a dsm-3 but it's so broad that you could say well I predict that half of you are going to be recidivist but we keep them we'll keep all all of them there it's not that it's the question is what is the evidence that is demonstrated other than his past sexual behavior that he can't control himself with respect to sexual assault just answer that if you would. The courts there's very few courts that have actually addressed the issue of the the level of antisocial personality disorder that's required however the seventh circuit addressed it in the Brown v. Waters case and mentioned that in a particular case antisocial personality disorder alone could be enough. Also this court recognized in the encompass different diagnoses whether they're in the dsm-4 or 5 or not. Oh absolutely so so the the point is that if the individual's diagnoses whatever they are are serious enough that would be enough for commitment under this statute. Now to answer your question specifically Mr. Antone's situation his polysubstance disorder his polysubstance dependence diagnosis and his antisocial personality together the district court considered that and she specifically recognized that in his case in the way that these two things together manifest themselves in him that she believed she was clearly convinced that he would go out and continue drinking and drugging as he puts it and therefore fall right back into the cycle that he had done years ago. The specific facts that that I think she placed a lot of the judge placed a lot of weight into is that Mr. Antone admitted that he would be he's always an alcoholic. He admitted on testimony that there's always a chance that he will drink if he's around a place that serves alcohol. He admitted that when he drinks he loses control. He admitted that the alcohol and drugs led him to sexually offend. He recognized that and he stated that he would have continued sex offending if he would have continued drinking and drugging. The only reason he didn't continue drinking and drugging is because he ended up in prison for 14 years. He's going to be detained for the rest of his life because he's always going to be an alcoholic. No that's not it. You think that an alcoholic can become a non-alcoholic? I think the answer to that I many time. I don't think there's anybody that would say that an alcoholic can become a non-alcoholic. I don't think so. But I think it's the other points that are important here and the other thing that the district judge recognized is that Mr. Antone is not a treated individual. He remains untreated. In his brief and in argument they mentioned that Mr. Antone has taken Alcoholics Anonymous and some taken some treatment but what's important to look at in the record is the level of that treatment. He's gone intermittently to Alcoholics Anonymous classes in prison. He's also attended and taken the 40-hour drug program. 40 hours. That's a week. Did he cut the 40 hours off or that's what's prescribed that you had for him? Well the Bureau of Prisons has another program a 500-hour program that Mr. Antone has not engaged in. Maybe more. Did you offer to him before he was about to be released or you did it after that you came and said he should be civilly committed? Mr. Antone has not had that program either way. Matter of fact he came forward and asked to be in a program early on and you said it's too early. Would that I'm sorry. I mean you meaning of course the government. The government not you. The government. I'm sorry are you referring to the sex offender program or the in terms of there's different programs which I guess is another point is Mr. Antone has not engaged or had not engaged in the sex offender program either prior to his ultimate commitment. Now he has since then but that's not in the record and not before the court but again that's that's the point I think that the district court took into consideration is the fact that he remained untreated both for his substance dependence and for his sexual sexual treatment and so to your point Judge Davis is that of course at some point Mr. Antone will get to the point where he won't be detained for the rest of his life. I can't tell you when that is. But how does he get to that point? Well the the Bureau of Prisons has a sex offender treatment program. In this case it's considered a called the commitment and treatment program and individuals. But that's his problem now and the problem now is that he's the substance abuse that you said is going to lead to that. So you conceded he's going to be alcoholic for the rest of his life. How does he ever get out? When the individuals the psychologists and the doctors in the commitment and treatment program do an individualized treatment plan for the sex offenders they include the entire person involved and so for Mr. Antone's case certainly his substance abuse which is one of his major problems here would be incorporated in his sex offender treatment program. So here's my real problem. I happen to be a judge who actually believes in burdens of proof which all too often in my opinion get overlooked in cases and litigation. The burden here on the government is clear and convincing proof focused on a predictive judgment about the future obviously and I have to ask you if this is clear and convincing rather than preponderance what is clear and convincing? I don't understand how the evidence in this record can rationally be said to prove to carry the government's burden by clear and convincing evidence. You mentioned yourself quite appropriately that the district court basically incorporated wholesale all these great facts all these bad facts which are historical facts and as Judge Gregory suggested in his question what does he have to do? What would what would a release decision in this case look like? What else could he have done over the last 15 years to demonstrate a likelihood that he has the requisite volitional control over both his substance dependence and the resulting violent activity in which he's engaged in the past? I think there were several questions there and to answer the last one first I'm not sure the question in the in the case before the district court was what else could he have done. I think the question for the district court was was she clearly convinced that weighing all the good things and all the bad things was she clearly convinced that he would pose a substantial risk of danger if released or have serious difficulty refraining actually if released and she concluded based on her analysis of the entire record and it wasn't just of the wholesale adoption of the magistrate's MNR she did a de novo review of the third prong and of considering the expert's testimony so she was clearly convinced what the standard of review for this court is obviously clearly error. I'm sorry to interrupt but I think what your argument what your argument sounds like is that whatever the burden of proof happens to be trial court if the trial court has reached that decision then as a matter of law the trial court applied the clear and convincing burden. No that's not in other words right I didn't think you meant to say that because then there would be no sufficiency of the evidence review and appeal right? No I guess we were going to say oh a jury a judge instructed the jury that they had to apply beyond a reasonable doubt the jury so concluded therefore the jury applied beyond a reasonable doubt obviously there's a sufficiency question buried in there that is proper for us on on appellate review. That's right and on appellate review the question would be did the district court clearly err? So the district court determined that there that she was clearly convinced and for for this court is this clear error the same as evidentiary sufficiency? No. I didn't think so so we don't have to find that she clearly erred do we if well forget we if if I'm satisfied and I'm not saying that I am but if I'm satisfied that as a matter of law the evidence here is not sufficient to establish the third prong of the civil commitment requirements by clear and convincing evidence I don't have to I don't have to find that she clearly erred I find it insufficient evidence. I would phrase it a different way your honor I believe that the district court's determination was the her analysis of the facts and that is the clear error so if this court were to determine that she clearly erred in analyzing the facts that's where the clear error standard comes into play there's not a de novo review in her in her determination as to the evidentiary standard that she met she believed that let me ask it let me come at it this way and then I'll stop if this is clear and convincing proof what could I take away from the record to make it preponderant proof I don't know I guess what I can say your honor is that there are so many things in Mr. Antone's case that the district court considered the fact that all of his sexual offenses he was drunk the fact that his substance abuse was so bad that he was passing out every other day and that's I think the important part to recognize in this case is that Mr. Antone is not just an alcoholic and he's not just a run-of-the-mill antisocial prisoner when you look at these things together and how they work with him it resulted in him getting drunk having his antisocial personality affecting his decision making and having him go and put himself in situations where he ends up raping either women 15 to 20 years ago and there's now been 15 or so years where he has demonstrated just about the most enviable record by an inmate I don't want to overstate it but he if he hasn't been the world's greatest inmate certainly his record behind the wall would be one that we wish most inmates would emulate I suspect from what I've seen the record he wasn't perfect I think the government would agree that he had as I think the district court recognized relatively good conduct there's no question about that however the district court also recognized that there are strict structures in prison there's limited access to alcohol or drugs and there's certainly limited access to his ability to rape women and children but most prisons have special housing units because despite the structure there is a significant percentage of inmates who don't thrive in that structure and we have an inmate in front of us today who has absolutely thrived in that structure the government would disagree with that that conclusion about absolutely I don't want to overstate it I don't want to overstate it but but I do I do want to just point out one more time and restate this the fact that that Mr. Antone's combination of his poly substance dependence and anti-social personality disorder together make him different and because of the fact that his access to alcohol and his access to his victim pool in the prison is significantly reduced that mitigates his ability to do that so well well the difficulty with this case is when you look at it and you have those three prong a lot of what you are actually relying upon is his past behavior to predict this forward-looking type behavior the judge specifically said this is not paraphilia so that's out of the picture you're now looking at the anti-social type disorder and one doctor is this Dr. Phoenix who says you know her diagnosis and the judge says it is it's really based on paraphilia but she said that she would have serious that he would have serious difficulty in reframing and and is that enough serious difficulty in reframing without this diagnosis because of this drug dependency but getting back to Judge Davis characterized it as being absolutely or certainly he's benefited from the prison the judge in our findings makes a finding to his credit respondent has participated in substance abuse treatment and evidently has refrained from using drugs and alcohol while incarcerated how long has it been caught incarcerated 13 or 14 years so you got someone who came in with a major problem and all those 13 or 14 years he's there he's participated according to the findings I mean I know there's other facts there but these are the findings in substance abuse he's refrained from using drugs and alcohol and so when you come down to it the evidence must stand at least the position of the court seems like it has to rest upon Dr. Phoenix's opinion that right uh Dr. Phoenix's opinion again was it was broader than just basing it solely on the paraphilia I mean she was asked specifically about what just reading the judge's findings they said she testified that he would have serious difficulty reframing even without this diagnosis that's right that's it I mean there's nothing else in her opinion other than just that uh and I don't know I guess intuitively isn't that everybody how would it not be everybody if you go into if you go into prison and you've got a substance abuse and alcohol problem you spend 13 years there you totally refrain from alcohol and substance according to the judge here you participate in an abuse program at the end of it how I mean any I mean you know I don't know if you need an expert to say that someone who's go who has this who started out with this if you're going to use alcohol you're going to you would have serious difficulty in reframing for doing it why is that not every case I think it may I answer this I think that the point is that um it's not every case and in this particular case the the way that these diagnoses manifested themselves in Mr. Antone makes the risk so bad and the the fact that he's gone 14 years without the opportunity to do it is an important piece here that that if he's given if he's let out and without the supervised release term or anybody to be able to check the opportunity to do it but no indication of any desire I mean no characteristics that would come up nothing to show he's trying to access things on the internet or he's trying to reach out to people or he's talking to other people there's nothing there for 13 to 14 years based upon the judge's finding and then I'm just trying to I mean this act is really kind of a interesting act in and of itself but when you come down to it when it ties into just this substance abuse alcohol that he had 13 14 years ago and Judge Davis posits and probably correctly that you don't just become a non-alcoholic I mean you're probably going to be like that so that isn't that every case Mr. Antone testified at the trial that he would be at risk to drink again if he goes to a place with alcohol I got to say that that the district judge probably gave that a lot of weight when she made this determination if she believed which she where did he where did she get it some weight I don't it's a it's in the and 242 it's it was testimony by Mr. Antone the specific thing where he said that he there's always a chance he'll drink if he goes to a place that serves alcohol is on journal pennex 242 and then there was some more testimony where he again explained I mean that's probably common sense an alcoholic there's always a chance you'll drink if you go to a place of of you serve a drink I mean what I don't know if that adds anything is there something else when he was trying to extend his supervised release and those kind of things did you oppose that I said that again I'm sorry when he was saying that he still had time and that the court still had the arm of supervision over him did you oppose that did we yes it would have been the district of Arizona we the government I do not believe in the district of Arizona opposed that oh you know and no one opposed it the court just the term made that on its correspondent it would have been sort of a modification of the supervised release term so if that would have happened the U.S. probation office in the district of Arizona would have been involved in going to the court to get that term modified so right as it stands now we don't know what he does or well as it stands now I I think that the district court was certainly reasonable in determining that there is no supervised release term based on ninth circuit precedent and you agree with that correct so you would say whatever the day comes if not today that miss Antoine gets out you would would be in favor just no supervision at all you wouldn't ask the court to put conditions at all I don't know under what authority the government would be able to do that with the ninth circuit precedent that's out there okay all right thank you you have a little time left thank you your honors I would have been more worried about Mr. Antoine if he would have said I'm never going to have another drink I have no temptation etc um that's just him acknowledging his disease um joint appendix 668 the government mentioned that he talked about I'm going to be drinking and drugging you know joint appendix 668 look at that again that's awareness look at the tense he was talking about the past he was in 1999 if y'all hadn't caught me if y'all hadn't caught me y'all hadn't stopped me I would have kept doing this and he believes that and I have no doubt again that's just acknowledgement of who he is the government belittled somewhat the 40-hour substance abuse again I'd point to joint appendix 1238 you know there was Mr. Antoine in the interview with Mr. Dom talking Dr. Dom talking about the substance abuse talking about the treatment that that was helpful and again maybe for someone in our position you know a 40-hour introductory substance abuse class may not be much for someone who comes from the reservation where Mr. Antoine came from who saw who had modeled for him nothing but alcoholism those 40 hours that first sense I mean you can almost see that that begins this process of wait a minute but what do we do there is something yes opinion of Dr. Phoenix that even though the court acknowledged the primary basis for the diagnosis of serious difficulty serious difficulty reframing was from the paraphernalia which the court then found was not there but went on to say that that even without that this person would have a serious difficulty from reframing two responses your honor I think if you look at Dr. Phoenix's answer on joint appendix 420 she was not at that point applying the legal standard under the statute she was effectively saying that you know he is someone who may you know he is someone in prison who suffers from alcoholism who may recidivate um I think as you pointed out judge win that that could almost be everybody and you know we had the article that was in evidence you know the government said we never challenged Dr. Phoenix on her article where she talked about you know how antisocial personality disorder is not enough you know Dr. Phoenix was their witness they had every opportunity to call her up and rehabilitate her with that and maybe this gets partly to what you were saying judge Davis about clear and convincing evidence um if the judge was going to rely on Dr. Phoenix I don't think there was enough evidence in there to rely on Dr. Phoenix she applied the wrong standard she believed there was a paraphernalia so what do you have to do when this thing comes back up because Judge Flanagan points out as the lawyer is that he doesn't mean he has to stay there forever you get 180 days you can come back he he doesn't suffer from a paraphernalia and he's in sex offender treatment um what what what can he do can can he stay sober to show he has volitional control over his alcoholism there is alcohol in prison and there are women in prison what happens after 180 days can you ask for a rehearing yes we may at that has 180 days expired I'm I honestly I'd have to look at the date your not sure we the burden of proof switches at that hearing it is on us and so it is a fundamentally different proceeding he's not going to be able to demonstrate any more sobriety than he's already demonstrated he's not going to be able to demonstrate any more control over his anger than he's demonstrated I don't see how Judge Flanagan would change her mind and if I may can you can you request a drink in prison so you can see what happens when he gets drunk that's the only thing I could see that he could do from an empirical standpoint give me a give me let me get drunk in prison and in a controlled environment just before the last act of course you would stop it you know you would let anybody be a victim but you would say okay test case and you go in and say oh he managed to have a good conversation or he lunged and we grabbed him but I'm it sounds a little funny but it really is the case because we're talking about science suppose that scientists come here and we rely on them that's what science does is test hypotheses instead what we do is we just allow conclusions and the law just so I mean what I mean we got to be creative here you think they might do that you request that no your honor um they obviously we believe that the commitment order was erroneous and should be Mr. Antone can do nothing if Mr. Antone wanted to drink that badly he would have had a drink there's alcohol in prison there's homemade alcohol there's alcohol smuggled in there's marijuana smuggled in they give the inmates breathalyzers you know there's an understanding that people with substance dependence do this Mr. Antone hasn't and yeah I mean short of you know the kind of hypothetical you're presenting there I think he's done enough and the district court at minimum had to sort of address that not just look at who he was in 1999 and we would say actually on this record I think get to say that there really wasn't enough evidence to commit him and if I may just conclude we would request that this court vacate the order and with instructions to release Mr. Antone because on this record I don't see how there could be by clear and convincing evidence a commitment thank you your honors thank you both we'll come down and greet counsel then proceed to our next case
judges: Roger L. Gregory, Andre M. Davis, James A. Wynn, Jr.